**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3542-20

CRISTINA AGUIRRE,

    Plaintiff-Respondent,

v.

CONDUENT PATIENT
ACCESS SOLUTIONS, LLC,

    Defendant-Appellant.

_____

> Argued January 5, 2022 – Decided March 28, 2022
>
> Before Judges Gilson, Gooden Brown, and Gummer.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0075-21.
>
> Wendy Johnson Lario argued the cause for appellant (Greenburg Traurig, LLP, attorneys; Wendy Johnson Lario and Nicole S. Adler (The Kullman Firm) of the Louisiana bar, admitted pro hac vice, on the briefs).
>
> Zachary R. Wall argued the cause for respondent (Wall & London, LLC, attorneys; Zachary R. Wall, on the brief).

PER CURIAM

Defendant Conduent Patient Access Solutions, Inc. (Conduent) appeals from an order denying its motion to compel arbitration and dismiss plaintiff's complaint. When plaintiff Cristina Aguirre was hired, she agreed to Conduent's dispute resolution plan and rules (DR Plan), which detailed her agreement to arbitrate all employment disputes. Conduent also sent plaintiff a notice concerning her rights under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. The notice informed plaintiff that she could file LAD discrimination claims in court.

The trial court held that the notice, together with other documents sent to plaintiff, made the DR Plan too confusing to constitute an enforceable agreement to arbitrate. The trial court, therefore, refused to compel plaintiff's claims, including her LAD claims, to arbitration.

We disagree with the trial court's interpretation and hold that the DR Plan is a valid and enforceable agreement to arbitrate. We also hold that whether the notice effectively removed LAD claims from the DR Plan is a question about the scope of the DR Plan, which should be decided by the arbitrator. Accordingly, we reverse and remand for the entry of an order that compels plaintiff's claims to arbitration and stays the litigation pending the arbitration process.

A-3542-20

I.

The facts relevant to compelling arbitration are established in the record. In April 2019, plaintiff applied to work for Conduent through an electronic, online application process. Plaintiff was required to review, agree to, or acknowledge numerous documents, including Conduent's DR Plan. The DR Plan was a seventeen-page document, made available electronically through a pop-up window. Conduent is wholly owned by Conduent Business Services, LLC. The DR Plan explained that it covered the parent corporation, Conduent, and all affiliated companies and employees.

The DR Plan stated that all disputes between an employee and Conduent will be resolved through final and binding arbitration. The DR Plan also explained that an employee was giving up the right to go to court and to have a trial by jury: "All Disputes not otherwise resolved by the Parties shall be finally and conclusively resolved through arbitration under this [DR Plan], instead of through trial before a court (including a jury trial). The Parties forego any right they may have to a bench trial or jury trial on a Dispute." "Dispute" was defined as "all legal and equitable claims" including alleged violations of "any federal, state or other governmental law [or] statute." It also included any allegations of discrimination or wrongful discharge.

3

In addition, the DR Plan stated that it "shall be governed by" the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Furthermore, the DR Plan explained that the arbitrator would resolve "any Dispute relating to the interpretation, applicability, enforceability, or formation of this [DR Plan] or any associated agreement."

On April 19, 2019, plaintiff completed and submitted her application for employment with Conduent. The application included an explicit acknowledgment that she "agree[d] to" Conduent's DR Plan.

On May 2, 2019, Conduent offered plaintiff employment and directed her to electronically review and sign additional documents. The following day, plaintiff accepted Conduent's offer and electronically executed the acceptance documents. In those documents, plaintiff acknowledged and agreed to the DR Plan. The agreement concerning the DR Plan was a three-page document summarizing the DR Plan and iterating that under the DR Plan, plaintiff was agreeing to resolve all legal claims by "FINAL AND BINDING RESOLUTION BY ARBITRATION."

On May 8, 2019, Conduent electronically sent plaintiff additional documents to review in connection with her employment. Among those documents was a "NJ Pay Equality Notice" (the Notice). The Notice explained

that "New Jersey and federal laws prohibit employers from discriminating against an individual with respect to his/her pay, compensation, benefits, or terms, conditions or privileges of employment because of the individual's sex." The Notice included a description of LAD and stated:

> The New Jersey Law Against Discrimination (LAD) prohibits employment discrimination based on, among other things, an individual's sex. LAD claims can be filed with the New Jersey Division on Civil Rights (NJDCR) or directly in court. Remedies under the LAD may include an order restraining unlawful discrimination, back pay, and compensatory and punitive damages.

Plaintiff acknowledged that she received and read the Notice on May 8, 2019.

On May 13, 2019, plaintiff began her employment with Conduent as a bilingual call-center representative. In August 2019, and March 2020, she applied for other positions with Conduent. Both times, plaintiff logged on to Conduent's electronic application system and was presented with the DR Plan. Each time, plaintiff clicked an acknowledgment box that she was bound by the DR Plan as a condition of her employment or transfer to a new position of employment.

Conduent terminated plaintiff's employment in May 2020. Seven months later, plaintiff filed a complaint against Conduent in the Law Division, contending that her termination was unlawful and the result of discrimination.

5

She alleged violations of LAD, asserting claims of gender discrimination, marital-status discrimination, and post-termination retaliation. Plaintiff also asserted a claim under the New Jersey Family Leave Act (FLA), N.J.S.A. 34:11B-1 to -16.

Conduent filed an answer and then moved to compel arbitration and dismiss plaintiff's complaint. After hearing oral arguments, the trial court denied Conduent's motion and explained its reasons on the record. The court held that the documents sent to plaintiff were too confusing to constitute a mutually understandable agreement to arbitrate. The trial court also reasoned that the Notice contradicted the DR Plan when it stated that LAD claims could be filed in court. Thus, the trial court held that plaintiff had not given a waiver of a right to file a New Jersey statutory claim in court, including claims under LAD and the FLA. On June 25, 2021, the trial court entered two orders denying the motion to compel and staying the litigation pending Conduent's appeal.

II.

On appeal, Conduent argues that the trial court erred in holding that the DR Plan was not a valid and enforceable agreement to arbitrate all of plaintiff's claims. Conduent also argues that plaintiff knowingly and voluntarily agreed to arbitrate all her claims, including LAD claims. Finally, Conduent contends that

a 2019 amendment to LAD, which prohibits the prospective waiver of any procedural or substantive rights under LAD, is pre-empted when applied to an arbitration agreement governed by the FAA.

1.    The Enforceability of the DR Plan.

The interpretation of an arbitration agreement and its enforceability are questions of law that we review de novo.  Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019); Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014).  It is indisputable that plaintiff received the DR Plan and indicated her assent to its terms.  Consequently, we also review de novo the question whether plaintiff agreed to arbitrate because that issue involves the application of established facts to the legal question of what constitutes assent to a contract. Skuse v. Pfizer, Inc., 244 N.J. 30, 50 (2020).

The DR Plan is governed by the FAA.  Under the FAA, arbitration is fundamentally a matter of contract.  Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); 9 U.S.C. § 2.  The FAA "places arbitration agreements on an equal footing with other contracts."  Rent-A-Center, 561 U.S. at 67. Accordingly, "the FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any

contract.'" Atalese, 219 N.J. at 441 (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Id. at 442 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). "A legally enforceable agreement requires 'a meeting of the minds.'" Ibid. (quoting Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)). Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Id. at 442-43; see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319-20 (2019). Employees can agree to arbitrate statutory claims if the "waiver-of-rights provision . . . provide[s] that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." Martindale, 173 N.J. at 95 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 135 (2001)).

To accomplish a waiver of rights, "[n]o magical language is required." Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016). Instead, "[o]ur courts have upheld arbitration clauses that have explained in various simple ways 'that arbitration is a waiver of the right to bring suit in a judicial forum.'" Ibid.

8                                                                                      A-3542-20

(quoting Atalese, 219 N.J. at 444). Accordingly, in employment settings, "a waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003).

The DR Plan expressly stated that the parties were giving up the right to pursue all employment-related claims in court and instead agreed to arbitrate those claims. In that regard, the DR Plan stated that it covered discrimination claims, including statutory claims.

The DR Plan was also the product of mutual assent. Plaintiff indicated agreement after she had the opportunity to review the DR Plan when she applied for employment with Conduent. The DR Plan clearly explained that the agreement to arbitrate all employment-related disputes was a condition of employment. Plaintiff reviewed the DR Plan electronically; our Supreme Court has held that electronic agreements to arbitrate employment disputes are enforceable if the employee could review the terms and the terms are clear. Skuse, 244 N.J. at 49-50. The Court also explained that an offer of employment or continued employment constitutes valid consideration. Id. at 50; see also Martindale, 173 N.J. at 88 (explaining that "continued employment has been

A-3542-20

found to constitute sufficient consideration to support certain employment-related agreements").

Plaintiff argues, and the trial court agreed, that the documents sent to her were numerous and too confusing. Although plaintiff was sent multiple documents, the DR Plan was clearly identified as a document plaintiff had to review and would be bound by if she accepted employment with Conduent. Indeed, plaintiff indicated her agreement to the DR Plan by clicking on a box to show her acceptance. Any contention that plaintiff clicked to indicate her acceptance without reading or understanding the DR Plan does not undercut her assent to arbitrate. See Skuse, 244 N.J. at 54. "[A] party to a contract 'is bound by the apparent intention he or she outwardly manifests to the other party.'" Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (quoting Domanske v. Rapid-Am. Corp., 330 N.J. Super. 241, 246 (App. Div. 2000)).

The controlling consideration is whether the employee had the chance to review and understand the arbitration agreement. See Skuse, 244 N.J. at 49-50. While plaintiff received many documents when she was applying for employment, she had the opportunity to review each of the documents, including the DR Plan. The DR Plan was expressly brought to plaintiff's attention, and

10

she had the opportunity to take the time she needed to review it. Consequently, we hold that the DR Plan is a valid and enforceable agreement.

> 2. Whether Plaintiff Knowingly and Voluntarily Waived Her Right to Pursue LAD Claims in Court.

The argument concerning confusion about the scope of plaintiff's waiver is based on the Notice. Employers with over fifty employees are required to provide their employees with notice of the right to be free of gender inequity or bias in pay, compensation, benefits, and other terms and conditions of employment. See N.J.S.A. 34:11-56.12 (requiring employers to follow regulation issued by the Commissioner of Labor and Workforce Development); N.J.A.C. 12:2-2.1 to -2.4 (issuing the form of notification); N.J.A.C. 12:2 App. B (describing the required notice). After agreeing to the DR Plan, plaintiff was sent the Notice. The plain language of the Notice is inconsistent with the DR Plan. The DR Plan stated that plaintiff was waiving her right to bring all statutory claims, including discrimination claims, in a court and was agreeing to arbitrate those claims.

The Notice stated that plaintiff had the right to file LAD claims "directly in court." Plaintiff, however, already had agreed to the DR Plan when she received the Notice. The issue, thus, is not whether the Notice somehow rendered confusing the language of the DR Plan, to which plaintiff already had

11 <span>A-3542-20</span>

agreed. Instead, the issue is whether the Notice modified or superseded the scope of arbitration set forth in the DR Plan to exclude from arbitration LAD claims.

In determining whether a matter should be submitted to arbitration, a court usually must evaluate whether the dispute falls within the scope of the agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Martindale, 173 N.J. at 92. The FAA, however, allows that scope-of-arbitrability question to be delegated to the arbitrator. Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. ___, 139 S. Ct. 524, 529-30 (2019). "Under the FAA, '[judges] retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision.'" Cottrell v. Holtzberg, 468 N.J. Super. 59, 70 (App. Div. 2021) (alteration in original) (quoting MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386, 401 (3d Cir. 2020)). After making the threshold decision that a valid agreement to arbitrate exists, a court must consider whether there is "'clear and unmistakable' evidence that the parties intended to delegate arbitrability questions to the arbitrator." Id. at 71 (quoting Henry Schein, 139 S. Ct. at 530). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties'

decision as embodied in the contract." Henry Schein, 139 S. Ct. at 528. In short, federal law requires threshold arbitrability questions to be resolved by an arbitrator when that is what the parties agreed to. Id. at 527-28.

The DR Plan expressly delegated to the arbitrator all questions concerning the scope of what can be arbitrated. That delegation includes the question of whether the Notice removed LAD claims from the scope of arbitration. In determining that scope question, the arbitrator can evaluate plaintiff's contention that when she received the Notice, she understood that it was not possible to waive the right to sue for discrimination in New Jersey.

Therefore, we do not determine the issue of whether plaintiff waived her right to pursue LAD claims in court as opposed to arbitration. Instead, that issue can be raised in the arbitration. If the arbitrator decides that the Notice superseded or modified the DR Plan, the arbitrator can direct that the LAD claims be returned to the Law Division for resolution. On the other hand, if the arbitrator determines that plaintiff waived her right to pursue her LAD claims in court, the arbitrator can determine the LAD claims. We note that the FLA claim is subject to arbitration because the Notice does not reference the FLA.

3.    Pre-Emption Under the FAA.

Effective March 18, 2019, the Legislature amended LAD to add several sections, including Section 12.7, which states that "[a] provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable."  N.J.S.A. 10:5-12.7(a) (codifying L. 2019, c. 39, § 1(a)).  Section 12.7 also provides that no right or remedy under LAD "or any other statute or case law shall be prospectively waived."  N.J.S.A. 10:5-12.7(b).

The 2019 amendments to LAD apply prospectively.  L. 2019 c. 39, § 6. In that regard, the amendment states:  "This act shall take effect immediately and shall apply to all contracts and agreements entered into, renewed, modified, or amended on or after the effective date."  Plaintiff agreed to the DR Plan in May 2019.  Accordingly, Section 12.7 of LAD would apply to the agreement to arbitrate between Conduent and plaintiff unless it is pre-empted by the FAA.

Because the trial court determined that the DR Plan was unenforceable, it did not decide whether Section 12.7 is pre-empted when applied to an arbitration agreement governed by the FAA.  We have recently determined that issue and held that the FAA pre-empts Section 12.7 when applied to prevent arbitration

called for in an agreement governed by the FAA. <u>See</u> <u>Antonucci v. Curvature</u> <u>Newco, Inc.</u>, \_\_\_ N.J. Super. \_\_\_, \_\_\_ (App. Div. 2022) (slip op. at 2).

4.  Remand.

In summary, we reverse and remand for entry of an order that compels plaintiff's claims to arbitration. In accordance with the FAA, the Law Division action is to be stayed pending the arbitration proceedings. <u>See</u> 9 U.S.C. § 3.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3542-20